Gary, how is it pronounced? Lear. Lear, versus the Procter and Gamble Disability Benefit Plan. We'll hear from counsel. Thank you, your honors. May it please the court, my name is Philip Tatlow. I represent Gary Lear in this matter. And this is an ERISA case. There's a lot of documents in your record, but it boils down to simpler items. And that is, issue one is the primary issue, whether the court below employed the proper standard of review in determining the plan administrator's decision. And that is set out, and it points out that this court has de novo review of whether the lower court applied the proper standard of review. We believe that they did not because of the rationale set out in Wu versus Deluxe Corporation and older Eighth Circuit case, which is still viable as set out in MetLife versus Glenn's footnote. If there's procedural irregularities that affect the outcome of the case, which give rise to serious questions on the plan administrator's decision making, the court may ratchet down the standard of review from arbitrary and capricious, as low as it wants to, even to de novo. But what they have to look at is the number of irregularities that exist that may have affected the outcome. And I'd like to point out, your honors, there are, there's not just one, there's not two, there's a whole litany of what we think are procedural irregularities. Number one, and this is tied into issue three, the penalty provision, which I won't focus on as much, we requested the plan as required by certified mail, all plan documents, summary plan, plan form 5500 for the relevant plan at issue. And most of that record that you have are plans that were produced to us that don't even apply to this case. There are 2013 and 2014 plans that don't apply. There are 2008 plans that don't apply. Was there a 2012 plan? We believe that there was because there was a 2012 summary plan description. And the summary plan description is a description of a bigger plan, a summary of the rights. In the court below and in the claims process, that was never produced, no 2012 plan. After the whole thing was over on summary judgment, the defendant submitted a affidavit, one-liner saying, oh, there was no 2012 plan. We don't believe that should even be considered. That wasn't part of the record in the claims process or any of the appeals. That came up later when we had no chance to test that by cross-examination, discovery, and to see whether it was truthful or not. So when you received the 2013 and the 2008 documents, did that come with it some kind of a cover letter or enclosed, please find the current plans or the plan that was in effect immediately prior or immediately after? How were they described? That's a good question, Your Honor. And the letter was very ambiguous. It just said we're enclosing the plan and the plan documents without identifying which plan applied. It doesn't identify which year applies, and it doesn't identify what they're producing. Now, in the documents, if you read through them and the record, the court made a finding there is no 2012 plan in the record. And so it left us searching through thousands of pages of records trying to figure out the relevant standard for which to appeal the denial by the plan administrator. And as the courts have said, the claims administrator in a denial must be very specific and detailed in the denial. And they also have to quote the plan provision, the year, the paragraph, the page number upon which they based the denial. They did nothing like that in this case. I've attached to the brief as an appendix to make it easier our appeal letter, their denial letters, and what they sent Mr. Lear and me during the process. And you'll see that letter violates the ERISA Department of Labor regulations and Sanday Circuit precedent. It doesn't give a detailed denial upon which to know what they're really basing their decision. And one of the things that I think is very telling is that in our appeal letter, we include new evidence, new evidence other than what was decided by the plan administrator including an entire 10 to 15 page vocational assessment by Vincent Stock. He evaluated the claimant. He looked at his ability to work or not work, education. And the denial letter doesn't even mention that report at all. It doesn't seek to discredit it or say why it wasn't valid. And that's just like the Mayo Clinic records we enclosed. Those were records of subsequent treatment after the claims denial in which our client had cancer and he had problems with absorption of minerals and vitamins, and they called it something like hypomagnesium and some other terms that I can't even pronounce, but basically due to losing a colon and an ileostomy, losing a gallbladder and some other problems, he didn't absorb vitamins and things properly and he was passing out. And those records made him a safety risk at Procter and Gamble where he was a line worker. Procter and, oh, I'm sorry, Judge Kelly. I was going to ask about, when you refer to your appeal letter, you're talking about you're appealing the original decision that you're complaining about, right? Correct. I didn't have the references. In that appeal letter, did you highlight those problems? I highlighted many problems in there. The procedural ones as well as the shortcomings you felt were associated with it due to the lack of attention to his medical problems? Well, I couldn't cite all the procedural irregularities because I submitted new records that they hadn't reviewed arguing this should change the process. And I didn't know they weren't going to review them or articulate that in the final denial. We don't have a chance to reply to their last denial. But the last letter where they denied him, you can read it. And the whole of their analysis of the medical records is one sentence saying, we've reviewed the medical evidence and find that that's not, we find that you're not disabled. And they don't even discuss the vocational report. And what's interesting is they had no vocational evidence. They hired an IME doctor, Dr. Marsh, who, if he analyzed his report, and I put this in my appeal letter, he lacked the qualifications of the treating physician, Dr. Freeman, a gastroenterologist. And he notes in his report, I'm not a gastroenterologist, implying I'm not as qualified as the treating doctor. And the reason that's important, Dr. Freeman was the nurse of the plan for Procter & Gamble, wrote Dr. Freeman a letter asking him to analyze his ability to work with this definition of the plan. And she gave him a definition that's different than definitions in the plans they produced to me. The definition they gave to our treating doctor was, are you totally disabled? Is it from a condition that's normally recognized in the medical field? And Dr. Freeman wrote her back saying, yes, he's permanently and totally disabled. He can't even do light duty work. And they'd give him a form to say, can he do these activities? He checked no on every single one and wrote him back. But that didn't satisfy him, so they hired Dr. Marsh. And so how does the, you're saying they sort of truncated the definition of totally disabled, correct? Which one? I'm sorry. When they sent it to Dr. Freeman, the nurse sent a truncated version of the definition. She said that was a full definition. This is our plan definition of permanent and total disability. How did that, ultimately Dr. Freeman said that he was totally disabled. The reason it harmed our client was that they had not produced a plan to us showing the definition later. That's what they said the definition was. That's what we relied on in appealing it. And yet later they're saying the definition's even more severe than that. Normally they have to be hospitalized or at home, not just totally disabled. But that's the definition they gave Dr. Marsh who said, oh, he's not totally disabled. Well, that's a different definition they gave the treating doctor. And that's their plan. That's the P&G plan's own nurse doing that. And that's an irregularity that shouldn't have existed. And I'd like to point out that Justice Scalia said in Cigna versus Amera, a summary plan description's not the same as a plan. It would be very peculiar if the summary plan description served as part of the plan or the actual plan because it's intended to be just a summary of their rights, not the whole plan. And therefore, in this case, when they were using the summary plan, they say that takes the place of the plan now. That's what they're saying post decision making. That's contrary to what Justice Scalia was saying in Cigna versus Amera. The other thing I'd like to point out if I could is that the report they relied on by Dr. Marsh was outdated and stale by the time they denied the claim. Now, why do I say that? It's because they did not, the plan did not submit our vocational report, the Mayo Clinic records or the St. Francis Medical Center records back to Dr. Marsh and say, hey, look at this new evidence and tell us, does this change your opinion? Instead, they stood on that denial that was a year old and ignored all the other evidence and didn't ask him to consider that. We think that's another irregularity. And by itself, maybe that's not enough because the standard on ERISA is difficult, I'll say. I've done lots of cases and there's only two or three where I've had the court lower the standard. But one of the cases I cite was from this circuit, U.S. District Court with Judge Jean Hamilton and she found that in Toohey versus Hartford that the plan administrator just can't arbitrarily avoid and discredit evidence from the plaintiff. They have to consider that and they can't ignore that and just rely on some IME report. They have to evaluate it and give reasons for why it's not good enough. In this case, they didn't do any of that. Now, another factor that's very unusual is when the claim was over and summary judgment existed, there was a report from a Dr. Sheaf and they had an IME doctor that was in their file that they never provided to me, even though they claim they sent me the whole claims file. And what they did, which is another irregularity, is probably because Dr. The IME doc said, I'm not a gastroenterologist. They hired this gastroenterologist to take a look at everything, do an IME report and put it in the file. And that doctor said, oh, well, from a gastroenterology standpoint, he doesn't have that bad of problems. But that's something they never produced to me for comment, for rebutting the evidence. It wasn't part of the claims file that they gave to us. And that's wholly improper under Abram versus Cargill in the 8th Circuit case. In that case, that one irregularity alone caused the court to remand it for a new decision where the plaintiff could look at that evidence, rebut it and respond to it. Here, they tried to stack the deck in their favor and they did so to my client's disadvantage. Did you raise the issue of the procedural irregularity regarding the improper definition? Did you raise that to the district court as a reason for higher standard of review? I believe I did, but I'm not positive, Your Honor. I can't, there were a lot of factors and I, right now, I can't recall. So I'll have to let the record reflect what I raised. If, so anyway, those are the points I'd like to make now. And I'd like to point out issue 3 deals with penalties. We think the court improperly denied them because they've never produced a 2012 plan. There has to be one that exists or they wouldn't have a 2012 summary plan description. And we think it should have been remanded for further evidence on that to the plan administrator plus giving us penalties until they produce it. If I could reserve the last minute for rebuttal. Very well. Thank you, Your Honors. Ms. Zorn, you may proceed. Good morning. Good morning. May it please the court, Stephanie Zorn on behalf of the Procter and Gamble Disability Plan et al. The district court's ruling was correct in all regards and should be affirmed by this court. With regard to the abuse of discretion standard that the district court applied in reviewing the trustee's decision, all plan documents and summary plan descriptions contain language affording the trustee's discretion, broad discretion to, among other things, determine eligibility for plan benefits. The district court concluded, consistent with this court's later decision in Boyd versus ConAgra Foods, that mere plan sponsor plan administrator conflict which does exist in this case is insufficient to trigger a less deferential standard of review. Further, despite appellant's contention, there were no procedural irregularities, serious or otherwise, in the administrative's claim process that might warrant a less deferential standard of review. And that is assuming arguendo that a less deferential standard might be available under WU and its progeny after the Supreme Court's ruling in Metro versus Glenn. This court has yet to decide that issue and this is not a case in which it should do so because appellant has not established any procedural irregularity. What about the problem in its definition? He's saying that, well, he relied on the wrong definition that was presented to his own doctor and wasn't allowed to proceed under a stricter definition that later ruled that he was denied the benefits. Well, first of all, that was, that letter was not sent as part of the claims review procedure. That was a mere ministerial act by a non-fiduciary which would not rise to the level of a procedural irregularity under Boyd. Even if it could be construed as such, he hasn't showed how he was prejudiced by the treating physician receiving only part of the definition of total disability, how the treating physician's opinion that Mr. Lair was totally disabled would have changed had the entire definition been received, and finally, he did not raise this issue before the district court. So this court should not consider it. To be, as Boyd explained, as judge woman, well, it knows, as well as the rest of this court, in order to potentially alter the standard of review, any procedural irregularity has to be a significant divergence in plan administrative procedure that amounts to a serious breach of the plan administrator's fiduciary duty and accordingly results in prejudice to the claimant. For example, in Wu, denying a claim without seeking an independent medical review. Here, however, appellant has failed to show any procedural irregularity that prejudiced him in any way. In support of his argument of procedural irregularity, Mr. Lair first asserts that the trustees failed to identify the controlling plan document and provision relied upon in denying his claim. The trustees' claim and appeal denial letters, however, specify the applicable plan document, which is the disability benefit plan, and the plan's definition of total disability. Any failure by the trustees to specify the annual version of the disability benefit plan that applied is not a procedural irregularity that prejudiced. Could that be a procedural irregularity if you got sent the wrong year's plan? Only if the material terms of that plan were different, and in this case, the material terms of every single plan document and SPD were the same. They all granted the trustees' discretion, and they all contain the same definition of total disability. And was that before the district court? I seem to understand opposing counsel's argument to say there was some post-talk one-line affidavit saying it was all the same. But was this before the district court? It absolutely was before the district court, Your Honor, and we represented to the court in briefing and by affidavit that all of the plan documents contain the same terms, and the district court specifically found that. So the purported different definition of total disability, we've touched on a bit already. There was no prejudice resulting from it. The issue was not raised before the district court, and Mr. Laird has not specified how his treating doctor's opinion might have been different had the complete definition been received from the non-fiduciary claims nurse. With regard to the assertion concerning a 2012 plan document, the assertion similarly does not establish procedural irregularity. First, the administrative record and the affidavit that Procter & Gamble provided established that the trustees provided Mr. Laird and his counsel every document he requested relevant to the claim and that there was no plan document entitled 2012 LTD plan or any similar name. Second, Mr. Laird acknowledges receiving the 2012 LTD SPD, which he represents in his brief, controls his claim. And finally, despite a full and fair opportunity to do so, Mr. Laird did not conduct any discovery concerning the existence of a purported 2012 plan. It is a bald assertion on his part that such a plan exists and was not produced and accordingly should not be credited by this court. Next, Mr. Laird argues that the trustees did not afford him a full and fair review as a procedural irregularity. I didn't quite hear that. Would you speak up just a little bit? I'm sorry. Sure. Next, Mr. Laird argues that the trustees did not afford him a full and fair review as a procedural irregularity. The trustees' denial of Mr. Laird's claim, however, fully complied with ERISA and Eighth Circuit standards, including applicable DOL claim review regulations that were in effect at the time of the claim. Laird argues that the trustees should have provided a more detailed analysis of the many hundreds of pages of medical records that he submitted without any explanation of how those records substantiated his burden under the plan to prove that he was totally disabled. What about the doctor's report that isn't mentioned? Doctor, is it Sheath? Dr. Sheath, he was an independent medical reviewer retained by the trustees at the end of the process of submission by Mr. Laird of documents to support his claim. Dr. Sheath was an independent medical review who reviewed all of the records that were submitted as part of the administrative record, including an extension of 45 days that was granted to Mr. Laird to submit all the records he wanted to submit, including records from the Mayo Clinic. So, Dr. Sheath performed that review and gave his opinion, independent opinion to the trustees that there was nothing in the administrative record to substantiate that Mr. Laird was totally disabled. But that's not mentioned, is it? I mean, is that not given as an explanation to Mr. Laird? It was not, and nor was it required to be. There was no, he did not, his request for the administrative record happened earlier in the case, and it was provided to him. The opinion of Dr. Sheath, under the applicable DOL regulations, he is not entitled to an opportunity to see it before the trustees' decision, nor is he entitled  to an opportunity to see it before the trustees' decision based on DOL claim review regulations that were in effect and applicable at the time of his claim. That would be different today, had his claim been submitted to the trustees on or after April 2nd of 2018, but that is not the case in this matter. So, any failure, even if he should have been afforded the opportunity to comment upon it, he is not shown how he was prejudiced in any way by not having that opportunity, which he was not entitled to under the DOL claim review regulations. So, again, that is not a procedural irregularity. That would change the standard of review in this case. And finally, the district court concluded with regard to Dr. Sheath's opinion that even excluding it from consideration in the case, the trustees' decision that Mr. Lehr was not totally disabled was still appropriate and not an abuse of discretion. And more on that in a moment. Finally, Mr. Lehr argues this procedural irregularity that the trustees did not sufficiently credit his medical evidence. However, as Glenn made clear, the relative weight given to medical evidence goes to whether the trustees abused their discretion in denying the benefit claim, not the appropriate standard of review. In summary, the district court clearly, correctly concluded that the abuse of discretion standard of review applied to Mr. Lehr's claim. The district court also correctly determined that the trustees did not abuse their discretion in denying Mr. Lehr's claim for additional disability benefits. Substantial objective evidence in the record indicated that Mr. Lehr did not satisfy the plan's definition of total disability as of July 23rd going forward. I'm sorry, July 2013 forward, which was the operative time period in this matter until Mr. Lehr's participation ended in the plan when his employment term terminated in 2014. Specifically, there was an April 2013 IME substantiating that Mr. Lehr could drive a car, mow his grass, and grocery shop. There was a May 2013 functional capacity evaluation that substantiated Mr. Lehr was able to perform medium demand work with some restrictions. And finally, Dr. Schaaf's independent medical review substantiated that based on the administrative record, there was nothing to support that Mr. Lehr could not work or was otherwise totally disabled as defined by the plan. It's true that Mr. Lehr's treating physician opined that he was totally disabled. However, the precedent of this court and the terms of the plan document do not require the trustees to credit a treating physician over other objective evidence in the administrative record. And the vocational rehabilitation evaluation referenced by Mr. Lehr's counsel offered the equivocal assessment that Mr. Lehr may be permanently disabled. And that that opinion may change after Mr. Lehr's treating physicians made recommendations concerning his physical limitations. Finally, that Mr. Lehr was subsequently approved for social security disability benefits is not binding on the trustees pursuant to the terms of the plan and the precedent of this court. And in summary, the district court was clearly correct in concluding that the trustees did not abuse their discretion in denying Mr. Lehr additional total disability benefits. Finally, the district court did not abuse its discretion in denying Mr. Lehr ERISA penalties. In exercising discretion to grant or deny penalties, courts primarily consider any prejudice to the climate and the nature of the plan administrator's conduct. Here, the administrative record establishes that the plan administrator responded promptly and completely to Mr. Lehr's document request and the request of his counsel. Mr. Lehr argues the district court abused its discretion, however, because he did not receive a 2012 plan document or a document with any similar name. However, there is no plan document with that name or a similar name. And to the extent there might be, although there is none, Mr. Lehr conducted no discovery on that issue. Simply put, there has been no showing of any prejudice to Mr. Lehr or any improper conduct on the part of the trustees. And accordingly, this court should conclude that the district court did not err in refusing to award him ERISA penalties. I have a little time left, and I'm happy to answer any questions this honorable court may have. Apparently, we have none. We thank you for your argument. Thank you. Your honors, I have very limited time, but I wanted to point out, if you see my appeal letter where I cite what Mr. Stock found, he found Mr. Lehr was incapable of performing any work whatsoever and lacked the training to adjust to new occupations. And Dr. Marsh said he didn't have all the records that our guy had sleep apnea and maybe had narcolepsy, and he needed to see those because he was a safety hazard. He might fall and get hurt or hurt others. Those were never given to him by the plan. I submitted them. They're discussed in my appeal letter. They relied on Dr. Marsh's undated report, unverified report that was too old. Under Abram versus Carhill, the Seth report that we're talking about, the court says that a report like this that's given to the people, not given to the claimant, and they use it in the claims file, is pure gamesmanship, and the Eighth Circuit isn't going to tolerate this gamesmanship because it's inconsistent with the full and fair review. The plaintiff has the right to see it, to comment on it, and we believe it's very prejudicial when you add up all of those other things. If you look at the records, which we ask you to do, we believe the overwhelming evidence is under any standard, Mr. Lehr is totally disabled. The IME report and Dr. Marsh didn't even take into account sleep apnea, narcolepsy conditions, or the Mayo Clinic records, or the records showing he was passing out due to inadequate minerals and vitamins. Thank you, Your Honor. Honors, it's a pleasure to be here. Very well. I'll thank both sides for the argument. The case is submitted, and we will take it under consideration. Thank you. Can I take a break?